# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY (TONY) GASTON,
   *Petitioner-Appellant,*

   v.

ANNA RAMIREZ PALMER,
   *Respondent-Appellee.*

No. 01-56367

D.C. No.
CV-00-06612-
NM(Mc)

OPINION

Appeal from the United States District Court
for the Central District of California
Nora M. Manella, District Judge, Presiding

Submitted September 10, 2003*
Pasadena, California

Withdrawn from Submission September 22, 2003
Resubmitted October 7, 2004
Filed August 2, 2005

Before: Andrew J. Kleinfeld, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

Opinion by Judge William A. Fletcher;
Dissent by Judge Kleinfeld

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a).

## COUNSEL

Gerson Simon, Los Angeles, Calfornia, for the petitioner-appellant.

Anthony (Tony) Gaston, California Medical Facility, Vacaville, California, for the petitioner-appellant.

Kyle Brodie, Michelle J. Pirozzi, AGCA - Office of the California Attorney General, Los Angeles, California, for the respondent-appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Anthony Gaston, a California prisoner, seeks review of the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court held that Gaston's petition was time-barred under the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244(d)(1). Gaston concedes that he filed his petition more than one year after the statutory period began to run, but he makes three arguments why the statute should be tolled. We agree with his third argument, and hold, on the facts of this case, that Gaston is entitled to tolling during the time his state court habeas applications were pending. "Pending," in this context, includes the intervals between the dismissal of one state application and the filing of the next one. Because Gaston is allowed tolling for the time his state court applications were pending, his federal habeas petition is timely. We therefore reverse the district court's dismissal of his petition and remand for further proceedings.

## I. Background

Gaston was found guilty by a Los Angeles County Superior Court jury of one count of first degree murder in 1994, and sentenced to 29-years-to-life in state prison. He timely appealed. Although Gaston was appointed counsel for his direct appeal, he moved to act as his own attorney. After Gaston was warned, by both his appointed attorney and the California Court of Appeal, of the pitfalls of representing himself on appeal, the motion was granted.

Acting as his own attorney, Gaston neglected to file a brief in support of his appeal. On February 9, 1996, the California Court of Appeal dismissed the appeal for failure to file a brief. Gaston's conviction became final on March 20, 1996, forty days after the dismissal by the Court of Appeal. *See* Cal. R. Ct. 24(b)(1), 28(e)(1). Because Gaston's conviction became final before the effective date of AEDPA, the statute of limitations for the filing of his federal habeas application began to run on April 24, 1996, the date AEDPA went into effect, and expired (in the absence of tolling) on April 24, 1997. *See Carey v. Saffold*, 536 U.S. 214, 216-17 (2002).

Gaston filed six applications for habeas corpus in the California state courts. He filed his first application in the California Court of Appeal on July 11, 1995. This application was denied on February 27, 1996, before his conviction became final and before AEDPA's statute of limitations began to run. He filed his second application with the Los Angeles Superior Court on June 9, 1997. This application was denied on July 17, 1997. Gaston filed four additional habeas applications in the California state courts, all of which were denied. He filed in the California Supreme Court on August 11, 1997 (denied on April 15, 1998); in Los Angeles County Superior Court on January 22, 1999 (denied on that date); in the California Court of Appeal on February 8, 1999 (denied on April 27, 1999); and in the California Supreme Court on February 28, 2000 (denied on June 2, 2000).

Gaston filed his first federal habeas petition on March 29, 1999. The district court dismissed the petition on March 1, 2000, "without prejudice to the petitioner's right to file a new petition after he has exhausted state remedies with regard to all issues raised therein." As noted above, the California Supreme Court denied Gaston's sixth and final state habeas application on June 2, 2000. A few weeks later, on June 20, 2000, Gaston filed his second, current federal habeas petition.

In support of his federal petition, Gaston submitted sworn statements and physicians' evaluations documenting physical

and mental disabilities from which he states he suffers. He states that he "hears voices," that he suffers from severe pain and multiple sclerosis, and that he is paralyzed from the waist down. The record is in conflict as to the extent of these disabilities, but it is undisputed that Gaston has been in a wheelchair and on psychoactive medications since at least early 1996. Gaston claims that his physical and mental disabilities have made it difficult to gain access to, and to use effectively, the prison law library to prepare his federal habeas petition. The case was referred to a magistrate judge who recommended that the district court dismiss the petition as time-barred under AEDPA's statute of limitations. 28 U.S.C. § 2244(d)(1). On de novo review, the district court adopted the magistrate judge's findings and recommendations and dismissed the petition with prejudice.

The district court denied Gaston's application for a Certificate of Appealability. We granted a Certificate of Appealability on the issue of whether the district court properly dismissed his application as untimely. We review issues of law de novo and findings of fact for clear error. *Houston v. Roe*, 177 F.3d 901, 905 (9th Cir. 1999).

## II.   Discussion

Gaston makes three arguments for tolling AEDPA's statute of limitations. He argues for equitable tolling; for relief due to an unconstitutional state "impediment," 28 U.S.C. § 2244(d)(1)(B); and for statutory tolling based on "pending" state habeas applications. *Id.* § 2244(d)(2). We disagree with Gaston's first two arguments, but we agree with his third. We discuss the arguments in order.

## A.   Equitable Tolling

**[1]** Gaston argues that he is entitled to equitable tolling based on his self-representation on direct appeal and his physical and mental disabilities. "Equitable tolling will not be

available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. United States Dist. Ct. for the Centr. Dist. of Cal. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds*, *Calderon v. United States Dist. Ct. for the Centr. Dist. of Cal. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998). Gaston bears the burden of showing that equitable tolling is appropriate. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

**[2]** Gaston has not shown any causal connection between his self-representation on direct appeal and his inability to file a federal habeas application. It is true that his failure to file an appellate brief while he represented himself caused his appeal to be dismissed, but he has not shown that his self-representation on appeal caused him to delay filing his federal habeas application. *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (petitioner must show that extraordinary circumstances were the cause of his untimeliness). Gaston's argument based on self-representation is therefore unpersuasive.

**[3]** Gaston's argument that his physical and mental disabilities constituted an "extraordinary circumstance" is also unpersuasive. The magistrate judge believed, assuming no tolling was available, that the statute of limitations expired on April 23, 1997. On this assumption, the magistrate judge's report, adopted by the district court, found the following:

> [Gaston] alleges that he was physically and mentally incapable of filing a petition on time. However, on July 11, 1995, [Gaston] filed a state habeas petition in the California Court of Appeal. Thus it is clear that [Gaston] was physically and mentally capable of preparing and filing a petition on that date. [Gaston] filed a state habeas petition in the Los Angeles County Superior Court on June 9, 1997. Thus, [Gas-

> ton] was capable of preparing and filing a petition on that date. [Gaston] does not allege that his physical or mental condition between the two filings was significantly worse than his condition immediately before or after July 11, 1995 and June 9, 1997. Because [Gaston] was capable of preparing and filing state court petitions on July 11, 1995 and June 9, 1997, it appears that he was capable of preparing and filing a petition during the time in between those dates. On the record presently before the court, it appears that [Gaston] was capable of preparing and filing a petition before the expiration of the statute of limitations on April 23, 1997.

The record before the magistrate and district judges was extensive, including numerous physicians' reports and affidavits by Gaston. It was not clear error for the district court to conclude that Gaston's physical and mental condition between July 11, 1995, and June 9, 1997, was not significantly worse than his condition immediately before or after those dates.

[4] The district court therefore properly rejected Gaston's argument for equitable tolling.

### B.    Impediment under 28 U.S.C. § 2244(d)(1)(B)

[5] Gaston also seeks relief from the statute of limitations based on his contention that the State impeded his filing of a federal habeas petition. Section 2244(d)(1)(B) provides that the statute of limitations "shall run from the . . . date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed[.]" Gaston argues that there were two such state "impediments": the California Court of Appeal's granting his request to represent himself on direct appeal, and the restrictions he faced as a physically disabled prisoner in making use of the prison law library.

**[6]** As noted above, Gaston has not shown a connection between the State's granting of his request to represent himself on appeal and his delay in filing his federal habeas petition. Therefore, Gaston's first claimed impediment is not persuasive.

The district court did not directly address Gaston's second claimed impediment. Gaston claims that the prison law library facilities were insufficiently accessible and thus constituted an impediment for someone with his physical disabilities. However, the district court's rejection of equitable tolling based on Gaston's disabilities constitutes an implicit rejection of his impediment argument. With respect to equitable tolling, the district court concluded that Gaston's disabilities did not render him incapable of filing in a timely manner because "he was capable of preparing and filing state court applications on July 11, 1995 and June 9, 1997, [so] he was capable of preparing and filing a petition during the time in between those dates." Although Gaston states that he had no access to legal materials or the prison law library while he was in the infirmary from November 1995 to March 1996, this episode took place before the statute of limitations began running in April 1996. He otherwise makes no argument that his physical disabilities were different in kind or degree during the period for which he claims an impediment.

**[7]** The district court's rationale for rejecting Gaston's equitable tolling argument squarely applies to this state impediment claim. The district court therefore properly held that there was no "impediment" to Gaston's filing his federal habeas petition within the meaning of § 2244(d)(1)(B).

### C.   Tolling under 28 U.S.C. § 2244(d)(2)

**[8]** Finally, Gaston argues for statutory tolling under 28 U.S.C. § 2244(d)(2). That section provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the perti-

nent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Because of the unusual nature of California's system of post-conviction collateral relief, it is sometimes difficult to reconcile the statutory tolling provision of § 2244(d)(2) with California habeas corpus procedure. In particular, it is sometimes difficult to determine whether an application for California habeas relief is "pending" within the meaning of § 2244(d)(2). However, we do have two points of clearly established law to guide us.

[9] First, the period during which a properly filed habeas application is actually before a state court — *i.e.*, from the date of its filing until its final disposition by that court — is tolled. Under any definition of the term "pending," the application is pending during that time. *See Saffold*, 536 U.S. at 218 (implicitly so holding); *Chavis v. LeMarque*, 382 F.3d 921, 925 (9th Cir. 2004) (explicitly so holding), *cert. granted*, 125 S.Ct. 1969 (2005); *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999). Second, in states that provide for collateral relief through the typical process of filing a habeas application in a state court of first instance and then appealing its denial "up the ladder" to an intermediate appellate court and then to the state supreme court, the "interval[s] between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court" are also tolled. *Saffold*, 536 U.S. at 219-21 (describing procedure in "typical 'appeal' States"). With these two established points in mind, we consider the peculiarities of California's "original writ" system. *See generally id*. at 221-25; *People v. Duvall*, 886 P.2d 1252, 1258-61 (Cal. 1995) (providing a summary of California habeas corpus procedure).

[10] California is not a typical "appeal" state. Instead, the California Constitution provides that each of the three levels of state courts — Superior Courts, Courts of Appeal, and the Supreme Court — has "original jurisdiction in habeas corpus proceedings." Cal. Const. art. VI, § 10. A California habeas petitioner, in contrast to his counterparts in typical appeal

states, may file an original application for habeas relief in a Superior Court, a Court of Appeal, or the Supreme Court. *See, e.g.*, *In re Clark*, 855 P.2d 729, 735-36 (Cal. 1993) (petitioner's first habeas application was filed in California Supreme Court). A Court of Appeal has "discretion to deny without prejudice a habeas corpus petition that was not filed first in a proper lower court" (*i.e.*, in a Superior Court), but the Court of Appeal need not do so. *In re Steele*, 85 P.3d 444, 449 (Cal. 2004) (citing, *inter alia*, *In re Ramirez*, 108 Cal. Rptr. 2d 229, 232 (Ct. App. 2001) (a Court of Appeal " 'has discretion to refuse to issue the writ as an exercise of original jurisdiction on the ground that application has not been made therefor in a lower court in the first instance' ") (quoting *In re Hillery*, 20 Cal. Rptr. 759, 760 (Ct. App. 1962))).

An application for state habeas relief in California must "allege with particularity the facts upon which [the petitioner] would have a final judgment overturned." *In re Swain*, 209 P.2d 793, 796 (Cal. 1949); *see id.* ("vague, conclusionary allegations . . . are insufficient to warrant issuance of the writ . . . ."); *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995) (an application for habeas corpus should "state fully and with particularity the facts on which relief is sought") (citing, *inter alia*, *Swain*, 209 P.2d at 796). An application for state habeas relief "should be filed as promptly as the circumstances of the case allow," *In re Stankewitz*, 708 P.2d 1260, 1262 n.1 (Cal. 1986), and any "significant delay" must be explained and justified with particularity by the petitioner. *Clark*, 855 P.2d at 738 & n.5 (citing *Swain*, 209 P.2d at 795 ("[I]t is the practice of this court to require that one who belatedly presents a collateral attack such as this explain the delay in raising the question.")); *Stankewitz*, 708 P.2d at 1262 n.1 (petitioner "must point to particular circumstances sufficient to justify substantial delay"). If an application for habeas relief fails to state the relevant facts with particularity or to explain and justify a significant delay, a California court may deny it without prejudice and allow the petitioner to file "a

new petition which shall meet [these] requirements." *Swain*, 209 P.2d at 796.

If the initially filed application for habeas relief in California state court is denied with prejudice, the applicant may file a new original application in a different level of court or, if the denial was from a Court of Appeal, he may "apply for a hearing in the Supreme Court." Cal. Penal Code § 1506; *see In re Reed*, 663 P.2d 216, 216 n.2 (Cal. 1983) (although "the sole and proper remedy after denial of a petition for writ of habeas corpus by a Superior Court is to file a new petition with the Court of Appeal," "[f]urther review may be sought in this court [*i.e.*, the Supreme Court,] either by a new petition for habeas corpus or, preferably, by a petition for hearing") (citing *In re Michael E.*, 538 P.2d 231, 237 n.15 (Cal. 1975)). Although the California Supreme Court "prefer[s]" that habeas petitioners ask for a hearing in that court after a denial by a Court of Appeal rather than file an original application, *Reed*, 663 P.2d at 216 n.2, we are unaware of any penalty imposed on a petitioner who files an original application in lieu of requesting a hearing.

**[11]** While a habeas petitioner can file identical claims in successive levels of California courts, he or she generally gets only "one bite at the apple" in each court because California has established a "general rule" that "all known claims" must be presented in a single application to a given court. *Clark*, 855 P.2d at 760. Hence, "[b]efore considering the merits of a second or successive petition, a California court will first ask whether the failure to present the claims underlying the new petition in a prior petition [filed in that court] has been adequately explained, and whether that explanation justifies the piecemeal presentation of the petitioner's claims." *Id*. at 745.

> [A]bsent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied. The only exception to this

rule are petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence.

*Id*. at 760 (emphasis in original). The California Supreme Court explained the meaning of "fundamental miscarriage of justice" as follows:

[F]or purposes of the exception to the procedural bar against successive or untimely petitions, a "fundamental miscarriage of justice" will have occurred in any proceeding in which it can be demonstrated: (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; (3) that the death penalty was imposed by a sentencing authority which had such a grossly misleading profile of the petitioner before it that absent the trial error or omission no reasonable judge or jury would have imposed a sentence of death; (4) that the petitioner was convicted or sentenced under an invalid statute. These claims will be considered on their merits even though presented for the first time in a successive petition or one in which the delay has not been justified.

*Id.* at 760-61 (footnotes omitted).

With this background, we turn to the question of whether Gaston's habeas applications were properly filed and pending such that he is entitled to tolling under 28 U.S.C. § 2244(d)(2).

### 1. "Properly Filed"

Because § 2244(d)(2) tolls only the time during which a "properly filed" application for state collateral review is pend-

ing, we must examine Gaston's six state habeas applications to determine if each was properly filed within the meaning of the statute. In *Artuz v. Bennett*, the Supreme Court construed the meaning of "properly filed" as follows:

> [A]n application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually pre-scribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . But in common usage, the question whether an application has been "properly filed" is quite sepa-rate from the question whether the claims contained in the application are meritorious and free of proce-dural bar.

531 U.S. 4, 8-9 (2000) (emphasis omitted). Applying this con-struction of the statute, we hold that all six of Gaston's state habeas applications were "properly filed."

**[12]** Putting Gaston's first and sixth state applications aside for the moment, we observe that the California state courts denied Gaston's second through fifth applications without comment or citation. We construe "postcard" denials such as these to be decisions on the merits. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992) (reaffirming *Harris v. Superior Court of the State of Cal. for the County of L.A.*, 500 F.2d 1124, 1128 (9th Cir. 1974) (en banc), *cert. denied*, 420 U.S. 973 (1975) (holding that "a postcard denial without opinion [issued by the California Supreme Court] is . . . a decision on the merits of the petition," except where a citation in the order indicates otherwise)); *cf. Clark*, 855 P.2d at 741 n.9 ("summary denial" of state habeas application "does not mean that the court has not considered the merits of the claims"). A decision on the merits necessarily implies that an application was "properly filed," because it is axiomatic that a court will not rule on the merits of an improperly filed application. Gas-

ton's second through fifth applications may therefore be properly used for purposes of § 2242(d)(2) tolling.

Gaston's sixth application was denied with citation to *In re Swain*, 209 P.2d at 796, and *People v. Duvall*, 886 P.2d at 1258. In *Swain*, the California Supreme Court "denied" Swain's application "without prejudice to the filing of a new petition which shall meet the requirements above," *i.e.*, the requirements that Swain more fully elucidate the facts that entitle him to habeas relief and "disclose his reasons for delay[ ]." 209 P.2d at 796; *see also Duvall*, 886 P.2d at 1258 (a habeas application should "state fully and with particularity the facts on which relief is sought") (citing, *inter alia*, *Swain*, 209 P.2d at 796). The ruling in *Swain* was thus not a final ruling on the merits of Swain's state habeas application, but rather was, in effect, a grant of a demurrer with leave to refile. California is a "code pleading" state in which facts in a civil suit must be pled with particularity, and a demurrer is the procedural device used to challenge the adequacy of pleading in a complaint or crossclaim. *See Smith v. Kern County Land Co.*, 331 P.2d 645, 648 (Cal. 1958) (To prevail "against a special demurrer, a plaintiff is required [ ] to 'set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of his cause of action.' ") (quoting *Goldstein v. Healy*, 201 P. 462, 463 (Cal. 1921)); Black's Law Dictionary 444 (7th ed. 1999) (noting that while in most jurisdictions, a "pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer" is generally termed a motion to dismiss, "the demurrer is still used in a few states, including California").

[13] In light of its citations to *Swain* and *Duvall*, we read the California Supreme Court's denial of Gaston's sixth habeas application as, in effect, the grant of a demurrer, *i.e.*, a holding that Gaston had not pled facts with sufficient partic-

ularity. While Gaston's sixth application was thus procedurally deficient under California law, it was not improperly filed within the meaning of § 2244(d)(2). *Bennett*, 531 U.S. at 9 ("the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are . . . free of procedural bar") (emphasis omitted). There is no indication that the application was time-barred, lodged in the wrong court or office, or formatted improperly. *See id.* at 8. Thus, because Gaston's sixth state application's "delivery and acceptance [was] in compliance with the applicable laws and rules governing filings," it was "properly filed" despite being procedurally flawed, and therefore may properly be used for purposes of § 2244(d)(2) tolling.

**[14]** The California Court of Appeal denied Gaston's first state habeas application "for lack of an adequate record." While the Court of Appeal did not cite any case law, we read this denial as based on a procedurally analogous ground to that underlying the denial of Gaston's sixth application. The sixth application was denied for failure to plead facts with sufficient particularity; the first application was denied for failure to supply a record with supporting facts. We therefore construe the Court of Appeal's denial of Gaston's first application as a denial without prejudice, analogous to the Supreme Court's denial without prejudice of Gaston's sixth application. In both cases, the dismissal was based on a fact-related deficiency, either as a matter of pleading of the facts, or of presentation of the record from which the facts could be ascertained. In neither case was the denial based on a holding that the application was improperly filed.

**[15]** We therefore conclude that all of Gaston's six California habeas applications were "properly filed" within the meaning of § 2244(d)(2).

### 2.  "Application" and "Claim"

We next consider the tolling effect of Gaston's state applications under 28 U.S.C. § 2244(d)(2). Before doing so, how-

ever, we note a key difference in the analysis of tolling under § 2244(d)(2), on the one hand, and exhaustion under 28 U.S.C. § 2254(b)(1)(A), on the other. Section 2244(d)(2) provides for tolling while a habeas "application" is pending in state court. A habeas "application" for which the period is tolled may contain one or more "claims." *See Bennett*, 531 U.S. at 9. Section 2254(b)(1)(A) requires a federal habeas petitioner to have exhausted his or her claims in state court before coming to federal court. Exhaustion is determined on a claim-by-claim basis. *See*, *e.g.*, *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 2003) ("A habeas petitioner must give the state courts the first opportunity to review any claim of federal constitutional error before seeking federal habeas review of *that claim*.") (emphasis added). "Only individual *claims*, and not the *application* containing those claims, can be procedurally defaulted under state law" pursuant to the adequate and independent state ground doctrine. *Bennett*, 531 U.S. at 9 (emphasis in original). In *Bennett*, the Supreme Court held that the issue of whether a state habeas application was "properly filed" is to be answered by looking at the "application" for state habeas relief as a single entity, and not to the claims contained therein on a claim-by-claim basis. *Id.* at 10. It follows that the relevant question for § 2244(d)(2) tolling purposes is whether a properly filed application is pending in state court, and not whether any particular claim was contained in that application. *Bennett*, 531 U.S. at 8-10.

### 3. "Pending"

We know that AEDPA's statute of limitations is tolled pursuant to § 2244(d)(2) during the periods between the filing of Gaston's applications in the California courts and the disposition of those applications. *See Saffold*, 536 U.S. at 218; *Chavis*, 382 F.3d at 925; *Nino*, 183 F.3d at 1005. Whether Gaston is entitled to tolling of the intervals between the disposition of one application and the filing of another is, however, a more complicated matter.

**[16]** In *Saffold*, the State of California argued that AEDPA's statute of limitations should not be tolled during the intervals between applications because "during this period of time, the petition is not under court consideration" and therefore not "pending." 536 U.S. at 219. The Supreme Court disagreed. It wrote, first, that California's "reading of the word 'pending' [ ] is not consistent with the word's ordinary meaning," *id.* at 219, and, second, that such a construction of "pending" would do violence to Congress's intent in passing AEDPA. It explained:

> California's reading would also produce a serious statutory anomaly. A federal habeas petitioner must exhaust state remedies before he can obtain federal habeas relief. The statute makes clear that a federal petitioner has not exhausted those remedies as long as he maintains "the right under the law of the State to raise" in that State, "by any available procedure, the question presented." 28 U.S.C. § 2254(c). We have interpreted this latter provision to require the federal habeas petitioner to "invok[e] one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 [ ] (1999). The exhaustion requirement serves AEDPA's goal of promoting "comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. 420, 436 (2000), by giving state courts "the first opportunity to review [the] claim," and to "correct" any "constitutional violation in the first instance." *Boerckel*, *supra*, at 844-845. And AEDPA's limitations period — with its accompanying tolling provision — ensures the achievement of this goal because it "promotes the exhaustion of state remedies while respecting the interest in the finality of state court judgments." *Duncan v. Walker*, 533 U.S. 167, 178 (2001). California's interpretation violates these principles by encouraging state prisoners to file federal habeas petitions before the State completes a full

round of collateral review. This would lead to great uncertainty in the federal courts, requiring them to contend with habeas petitions that are in one sense unlawful (because the claims have not been exhausted) but in another sense required by law (because they would otherwise be barred by the 1-year statute of limitations).

*Id.* at 220. The Court therefore concluded that habeas petitioners in "typical 'appeal' States" are entitled to "interval" tolling under § 2244(d)(2), that is, to tolling for the time "during the interval between a lower court's entry of judgment and the timely filing of a notice of appeal (or petition for review) in the next court." *Id.* at 219, 221.

The Court in *Saffold* held that habeas petitioners proceeding through California's "original writ" system are also entitled to "interval tolling." *Id.* at 223; *see Nino*, 183 F.3d at 1006 (holding that "the AEDPA statute of limitations is tolled for 'all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application.' ") (quoting *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999)). In *Saffold*, the Court was presented with a petitioner who had followed a neat progression in the California courts. The petitioner filed his first habeas application in the Superior Court, his second application in the Court of Appeal, and his third application in the California Supreme Court. All applications stated the same four claims, and all applications were denied. 536 U.S. at 217; *see Welch v. Carey*, 350 F.3d 1079, 1082 (9th Cir. 2003) (en banc) (discussing *Saffold*). Five days elapsed from the time the Superior Court denied the application until the applicant filed in the Court of Appeal, and 140 days[1] elapsed from the time the

---

[1]The Supreme Court decision in Saffold describes the final interval as four and one-half months. *Saffold*, 536 U.S. at 217. The earlier Ninth Circuit opinion specifies the interval as running from June 26, 1997 to November 13, 1997, a period of 140 days. *Saffold v. Newland*, 250 F.3d 1262, 1266 (9th Cir. 2000).

Court of Appeal denied the application until he filed in the California Supreme Court. *Id.* On these facts, the Supreme Court held that California's "original writ" habeas system operated with sufficient similarity to the typical "appeal" systems found in other states to treat the two systems as functional equivalents. *Id.* at 223. Applying the rules applicable to "appeal" systems, the Supreme Court held that § 2244(d)(2) allowed tolling for the periods during which the three applications were actually pending before the Superior Court, Court of Appeal, and California Supreme Court, as well as for intervals between each court's denial and the next filing. *Saffold*, 536 U.S. at 217. It remanded for a determination by this court whether the 140-day interval had been deemed too long by the California Supreme Court. *Id.* at 226.

Not all California habeas applicants proceed through the California courts in as orderly a fashion as the applicant in *Saffold*. When applicants follow a more complicated or circuitous route, California's "original writ" system and its flexible procedural rules fit awkwardly with AEDPA's regime of cooperative federalism and deference to state courts. Since *Saffold*, this circuit has developed a framework for applying AEDPA's statutory tolling rules to petitioners from California.

On remand from the Supreme Court in *Saffold*, we held that the timeliness of a California state habeas application depends entirely on California law. That is, our determination of whether a California applicant sought habeas relief in a timely fashion is governed by whether the California courts have dismissed his applications as untimely. *Saffold v. Carey*, 312 F.3d 1031, 1036 n.1 (9th Cir. 2002) ("*Saffold II*"). We explained our decision as follows:

> We take pains to note that we have not been asked to provide any bright-line rule for determining what constitutes "unreasonable" delay under California's indeterminate timeliness standard. While such a

bright-line rule would certainly be welcomed, it is ultimately irrelevant to the determination of this case. In any event, such an issue is more appropriately decided by the California Supreme Court or the California State Legislature.

*Id*. at 1036 n.1. We followed the analysis in *Saffold II* in *Chavis v. LeMarque*, 382 F.3d 921, 925-26 (9th Cir. 2004), *cert. granted*, 125 S.Ct. 1969 (2005), where the interval between the petitioner's first and second habeas applications in California state court was three years. Relying on *Saffold II*, we held that timeliness was a matter for the state courts to determine:

> The state argues that we must determine the reasonableness of the three-year delay during Chavis's first round of state petitions, looking to state law. However, we rejected that approach on remand in *Saffold*, and held that the relevant inquiry is whether the state court denied the petition as untimely.

*Id.* at 925-26.

Next, in *Welch v. Carey*, 350 F.3d 1079 (9th Cir. 2003) (en banc), we held that a state habeas applicant is not entitled to interval tolling when he abandons the claims in his first application. The applicant in *Welch* filed a first habeas application in California Superior Court in 1994 asserting ineffective assistance of counsel. The application was denied shortly thereafter. Four years later, he filed another application for state habeas relief, this time in the California Supreme Court. In this second state application, "he alleged new and different grounds for relief than the ground advanced in his 1994 claim." *Id*. at 1080. The completely different claims in the second application, coupled with the four-year delay, led us to conclude that the petitioner had "abandoned" his first set of claims. We therefore held that there was no application "pending" for purposes of § 2244(d)(2) during the interval

between his first and second applications. *Id.* at 1083. Thus, the petitioner was not entitled to interval tolling for the four-year interval between applications. *Id.* at 1083-84.

Finally, in *Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003), we held that "[t]he period of time that an application for post-conviction review is pending is not affected or 'untolled' merely because a petitioner files additional or overlapping petitions before it is complete." In *Delhomme*, the petitioner had filed two new habeas applications in the California Court of Appeal despite the fact that he already had a petition pending in that court. And later, while his application to the California Supreme Court was pending, he filed new petitions in both the Superior Court and the Court of Appeal. We determined that these "overlapping petitions" did not affect Delhomme's entitlement to interval tolling. That is, the fact that Delhomme had started new rounds of review while the first one was still under way did not interrupt or interfere with that first "complete round" of state habeas review. Had Delhomme completed his first full round of review before beginning a new round with subsequent filings, he would not have been entitled to tolling for the interval between the completion of the first round and the beginning of the second. *See Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) ("Because the claims raised in the petition to the California Supreme Court were fully exhausted and his first round of collateral review was complete when the Court's ruling became final, he is not entitled to tolling of the 129-day period before he began a second round of petitions with his filing in Superior Court.").

**[17]** Reading *Saffold, Welch,* and *Delhomme* together, we know the following. First, the length of time available for interval tolling between California state habeas applications is determined by state law. Second, a California habeas applicant is not entitled to interval tolling if he abandons all of his claims in his first application and his second application sets forth new and different claims. Finally, an applicant is entitled

to interval tolling for one full round of state habeas review even if he initiates a new round of review before the first round is complete. With these propositions in mind, we examine Gaston's six state habeas applications.

Gaston's first application, filed in the California Court of Appeal on July 11, 1995, asserted four grounds for relief:

  (1)  false imprisonment and ineffective assistance of counsel ("IAC") for failing to call witnesses in this regard;

  (2)  lack of *Miranda* warnings and IAC for failing to challenge the violation;

  (3)  IAC for failing to move to suppress a gun;

  (4)  deprivation, by trial attorney, of trial transcripts to be used for pro se appeal.

This application was denied on February 27, 1996, for lack of an adequate record, before AEDPA's statute of limitations began to run. As explained above, we construe such a denial as the equivalent of a demurrer with leave to refile.

Gaston's second application was filed in California Superior Court on June 9, 1997, shortly after the statute of limitations would have expired in the absence of tolling. This second application sought relief on several of the same grounds as the first application, though it also included additional grounds for relief. This application sought relief on five grounds:

  (1)  false imprisonment and IAC for failing to call witnesses in this regard;

  (2)  physically coerced confession, lack of *Miranda* warnings, IAC for failing to challenge these violations;

    (3)   IAC for failing to move to suppress a gun;

    (4)   IAC for failure to challenge ballistic test;

    (5)   illegal search of Gaston's girlfriend's resi-
          dence.

This second application was denied on July 17, 1997.

Gaston's third application was filed in the California
Supreme Court on August 11, 1997. It sought relief, based
entirely on California law, from the procedural default of fail-
ing to file an appellate brief in Gaston's direct appeal from his
conviction. This application did not raise any of the claims
raised in Gaston's earlier or later applications. It was denied
on April 15, 1998.

Gaston's fourth, fifth, and sixth applications were filed in
California Superior Court on January 22, 1999 (denied on that
date), the California Court of Appeal on February 8, 1999
(denied on April 27, 1999), and the California Supreme Court
on February 28, 2000 (denied on June 2, 2000). In each of
these applications, Gaston continued to seek relief on grounds
raised in his first and second applications. He also asserted
additional grounds. Each application asserted the following
eleven grounds for relief:

    (1)   IAC for failing to call witnesses regarding false
          imprisonment;

    (2)   physically coerced confession;

    (3)   IAC for failing to move to suppress a gun;

    (4)   IAC for failing to discover tape recorded evi-
          dence regarding *Miranda* violation;

    (5)   IAC for failure to challenge ballistic test;

(6) IAC for conflict of interest;

(7) insufficient evidence to convict;

(8) *Brady* violation;

(9) prosecutorial misconduct;

(10) abuse of discretion by appeals court to allow him to act as own attorney;

(11) IAC for failure to object to hearsay.

None of these applications was denied by the California courts on timeliness grounds.

To recapitulate, the sequence of Gaston's six state court applications was as follows: (1) Court of Appeal; (2) Superior Court; (3) Supreme Court; (4) Superior Court; (5) Court of Appeal; (6) Supreme Court. Gaston's first application, filed in the Court of Appeal, was dismissed without prejudice for lack of documentation. Both the filing and dismissal took place before the effective date of AEDPA. Because the Court of Appeal dismissed the application without prejudice, later filings based on the same claims, in that court or any other court, were not precluded. Because Gaston's second application, filed in Superior Court, sought relief on several of the same grounds as his first application, it was part of Gaston's first full round of review, which had been begun with the filing of the first application. *See King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003). Gaston's third application, filed in the Supreme Court, initiated a new, overlapping round of review based on state, rather than federal, law.

Gaston's fourth application is somewhat anomalous because he filed it in Superior Court, which had already rejected some of the claims raised therein. That is likely why the Superior Court rejected the application on the day it was

received. After that rejection, Gaston began moving up the ladder, raising in his fifth and sixth applications, in the Court of Appeal and the Supreme Court, precisely the same claims he had raised in his fourth application in the Superior Court. Gaston's sixth application was the first application in which he raised in California Supreme Court the claims he now seeks to bring in his federal habeas petition. After the California Supreme Court denied that sixth application, Gaston came directly to federal court.

Gaston did not complete a full round of habeas review until the California Supreme Court denied his sixth and final habeas application. In seeking habeas review, Gaston behaved exactly as a petitioner in a typical appeal state would, with three minor exceptions.

First, Gaston's third application initiated a new, overlapping round of review in the Supreme Court, based on California law, while his first round of review was still pending. Because this application (and second round) was based on state law, it is irrelevant for purposes of exhaustion and completion of Gaston's first round of state court collateral review of his federal claims. But even if this application had been based on federal law, *Delhomme* tells us that a habeas petitioner's entitlement to statutory tolling for one full round of state habeas review is not affected by his filing of an independent habeas application during that initial round. 340 F.3d at 820. The only difference between this case and *Delhomme* is that Gaston began his new round of review in the Supreme Court, rather than in a lower court. But under California law, a round of habeas review can begin in any level of court. Indeed, in *Welch*, we held that the petitioner initiated a new round of review by filing in the Supreme Court. 350 F.3d at 1082.

Second, Gaston filed the some of the same claims twice in the Superior Court, in his second and fourth applications. Particularly given that the redundant fourth application was pend-

ing for only one day, we did not find this application significant. We are aware of no case suggesting that the filing of a redundant petition, which is denied immediately, deprives a petitioner of the right to interval tolling. Alternatively, if we construe Gaston's redundant fourth application as the start of a new round of habeas review, it does not affect Gaston's entitlement to statutory tolling. In that case, the fourth application would fall under *Delhomme*'s rule that beginning a new round of habeas review while the first is ongoing does not affect one's entitlement to tolling for the entirety of the first round of review.

Third, Gaston filed his first application in the Court of Appeal and his second in the Superior Court. The Court of Appeal dismissed the initial application without prejudice on the procedural ground that Gaston had failed to supply sufficient supporting documents. Under California law, Gaston was permitted to file another application in which the procedural deficiency was corrected, and to do so in any court, including the Superior Court. *See King v. Roe*, 340 F.3d at 823 (when a California petitioner files a subsequent petition, it does not constitute a new round of review if the petitioner is simply attempting to correct deficiencies in an earlier filing). We regard as insignificant the fact that Gaston filed his second application in the Superior Court rather than in the Court of Appeal. Gaston was in no way seeking to overturn the decision of the Court of Appeal. Rather, he was merely trying to correct the procedural deficiency in his initial application that had been pointed out by the court, and to file a procedurally proper application in what was a permissible — indeed, under California law, the preferred — forum for an initial application.

**[18]** Nothing about the course that Gaston took through California's courts in seeking habeas relief undermines the conclusion that Gaston is entitled to statutory tolling during the time he was completing his first full round of habeas review. That period lasted from the filing of his first applica-

tion to the denial of his sixth. There can be no doubt that Gaston's first full round of habeas review lasted far longer than it would in a typical appeal state with strict filing deadlines, but we are required to give deference to the structure of California's habeas system, and to the fact that no state court dismissed any of Gaston's applications as untimely. *See Saffold II*, 312 F.3d at 1036 n.1; *Chavis*, 382 F.3d at 925-26.

**[19]** Because Gaston is entitled to tolling for the duration of his first full round of state habeas review, AEDPA's statute of limitations was tolled until June 3, 2000, the date his sixth petition was denied by the California Supreme Court. Gaston filed his second federal habeas petition on June 20, 2000, only seventeen days into the limitations period. Gaston's petition is therefore timely.

### 4.   Exhaustion

**[20]** Because the district court dismissed Gaston's second federal habeas petition as untimely, it did not reach the question whether the claims contained in the petition had been exhausted in state court. We remand to the district court for a determination of whether those claims have been exhausted.

### Conclusion

For the reasons stated above, we VACATE the dismissal of Gaston's federal habeas application as untimely and REMAND to the district court for further proceedings.

---

KLEINFELD, Circuit Judge, dissenting:

Gaston murdered a man in the summer of 1992, and was convicted of the murder in 1994. Yet now, more than a decade later, he is still litigating his case. Congress tried to put a stop to this sort of endless habeas litigation by imposing

a one-year statute of limitations, which is reasonably tolled while a prisoner is exhausting his state remedies, but we have to a considerable extent gutted that statute. Today, we punch a new hole in the statute of limitations.

The majority has done a commendable job of figuring out what Gaston's many pro se filings are trying to say. Part of the error in the majority opinion is compelled by circuit law that I think is mistaken. But the majority also makes what I believe is a new mistake. That mistake is treating the statute of limitations as tolled pending state exhaustion, when, instead of going "up the ladder" from the California Superior Court, to the Court of Appeal, to the Supreme Court, the petitioner goes up, down, and sideways. This new mistake puts today's decision in tension, if not in conflict, with three other decisions of this court.

I concur in most of the majority opinion, and speak here only to the aspects of the tolling issue with which I disagree.

## Duration of the gaps between petitions

Gaston had gaps of approximately nine and ten months, specifically 282 days and 307 days, when he had nothing pending anywhere in the California courts. The statute of limitations says that time is tolled when a properly filed application for post-conviction relief is "pending" in state court. Nothing was pending during the long periods between Gaston's petitions. Nevertheless, our decision in *Chavis v. LeMarque*,[1] which came down after our original panel decision in this case, now compels us to treat even a three-year gap between filings when nothing is pending as though something actually were pending, so long as the subsequent state application for post conviction relief was denied on grounds other

---

[1] *Chavis v. LeMarque*, 382 F.3d 921 (9th Cir. 2004), *cert. granted*, 125 S. Ct. 1969 (2005).

than untimeliness.[2] *Chavis* strikes me as bad law. If the state court concludes that the state petition was untimely, "that is the end of the matter," under *Pace v. DiGuglielmo*,[3] but, as the Supreme Court decision in *Carey v. Saffold*[4] points out, a state court decision rejecting a petition on the merits does not imply that the petition *was* timely.[5] Nevertheless, if *Chavis* stands, then Gaston is entitled to the fiction that his state applications were "pending" during the nine and ten month periods when they were not. Evidently, filings within three years of dismissals are timely enough to keep a petition "pending" under our circuit's law, unless a state court expressly states that the petition is "untimely."[6]

### Up, down, and sideways

Gaston was popping petitions all over the California court system. The panel's decision to treat his petitions as maintaining "one complete round" of "pending" post-conviction relief is contrary to circuit law. This mistake is new to Ninth Circuit law.

In a typical state system, a prisoner may file a petition for a state writ of habeas corpus or other post-conviction relief in the state trial court of general jurisdiction. If he loses, he can appeal to the state intermediate appellate court, and then if he loses there, he can petition for review to the state supreme court. Obviously, the state proceedings are pending between the time of filing and the time of decision. But what about the time between a decision in a lower court and the filing of an appeal or petition for review in the next court up? Fairness and the policy requiring exhaustion in state court require that

---

[3]*Id.* at 925-26.

[3]*Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1812 (2005).

[4]*Carey v. Saffold*, 536 U.S. 214 (2002).

[5]*Id.* at 226.

[6]*Chavis*, 382 F.3d at 926.

the time during these intervals — typically controlled by a rule or statute providing for perhaps thirty days — is treated as though a properly filed application was "pending." Otherwise, time would accumulate against the short, one-year statute of limitations while the prisoner was giving the state's appellate courts a chance to correct any error the trial court may have made.

California is different from a typical state in form, but not function. A prisoner files his petition in the state superior court, but if he loses, he does not "appeal" to the state's intermediate appellate court. Instead he files a new petition there. And instead of being limited to thirty or some other fixed number of days, he is limited to a "reasonable time." Likewise, if he loses at the intermediate appellate court, he can file a new petition within a reasonable time in the state supreme court. As the Supreme Court said in *Saffold*, "California's collateral review process functions very much like that of other states, but for the fact that its timeliness rule is indeterminate."[7] The prisoner, *Saffold* explains, properly " 'invokes one complete round of the State's established appellate review process' " to exhaust his claim.[8]

So, leaving out the timeliness problem, which is solved for Gaston by *Chavis*, did he follow the procedure recognized by *Saffold* as analogous to the usual state procedure? Not at all. He started in the middle, at the Court of Appeal. Then he went downstairs instead of upstairs, to the Superior Court. Then he went upstairs skipping a floor, to the Supreme Court. Then he went down two floors to the Superior Court. Then he went one flight up, to the Court of Appeal, and then another flight, to the Supreme Court.[9] When he went downstairs instead of

---

[7]*Saffold*, 536 U.S. at 222.

[8]*Id.* at 220 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[9]Gaston's haphazard fillings throughout the California court system are as follows: (1) California Court of Appeal, July 11, 1995 (denied February

upstairs, from the Court of Appeal to the Superior Court, he had deviated from the "one complete round of the State's established appellate review process" he was entitled to. The one-year period given to Gaston by AEDPA to exhaust his state remedies started in April 1996, when the Court of Appeal's denial of his petition became final. He did not file another petition until his trip downstairs to the Superior Court in July 1997. Had he been pursuing "one complete round of the State's established appellate review process" during that year, the statute of limitations would be tolled, but he was not pursuing anything during the long gaps between his filings. Even if the long fallow periods are ignored under *Chavis*, Gaston went the wrong way. A prisoner making "one complete round of the State's established appellate review process" has to go upstairs, not downstairs, at each step. Otherwise, his course makes no sense, because a lower court cannot reverse a higher court.

We issued a trilogy of cases on the up, down, and sideways problem: *Biggs v. Duncan*,[10] *King v. Roe*,[11] and *Delhomme v. Ramirez*.[12] *Biggs* holds that when a prisoner who had filed habeas petitions in the Superior Court, the Court of Appeal, and the Supreme Court, then filed another one in the Superior Court, he thereby "kicked off a new round" and the AEDPA limitations period is only tolled for one round.[13] *Biggs* emphasizes that during the state exhaustion process, a California

27, 1996), (2) California Superior Court, June 9, 1997 (denied June 17, 1997), (3) California Supreme Court, August 11, 1997 (denied April 15, 1998) (4) California Superior Court, January 22, 1999 (denied January 22, 1999), (5) California Court of Appeal, February 8, 1999, (denied April 27, 1999), and (6) California Supreme Court, February 28, 2000 (denied June 2, 2000).

[10]*Biggs v. Duncan*, 339 F.3d 1045 (9th Cir. 2003).

[11]*King v. Roe*, 340 F.3d 821 (9th Cir. 2003).

[12]*Delhomme v. Ramirez*, 340 F.3d 817 (9th Cir. 2003).

[13]*Biggs*, 339 F.3d at 1048.

petition is "pending" only "during the 'intervals between a *lower* court decision and filing of a new petition in a *higher* court.' "[14] *Biggs* quoted this phrase from the Supreme Court decision in *Saffold*, adding the emphasis to the words "*lower*" and "*higher*." The panel in *Biggs* noted that the petition remained pending "while he worked his way up the ladder," but not when he filed in the Superior Court after his Supreme Court filing, because then he was not going "up the ladder." Circuit law under *Biggs* is that a new petition filed down the ladder, instead of up, is not part of the "one full round" a petitioner gets in state court, so the period between the higher court dismissal and the lower court filing is not a time when a petition is "pending" in state court.

In *King*, the petitioner's subsequent petitions did not merely remedy deficiencies in his first petition or elaborate upon the facts relevant to his claims in his first petition, so we held that they were not part of his "one full round" and his one-year period expired despite their pendency.[15] In *Delhomme*, while the prisoner's petitions were pending in their respective up-the-ladder courts during his one full round, he filed additional overlapping petitions — sideways in the same court and down the ladder in lower courts.[16] We held that tolling nevertheless saved him from the one-year bar.[17] The reason was not that the up, down, and sideways petitions tolled the statute, as the majority decides today. Instead, we held in *Delhomme* that the up, down, and sideways petitions were mere noise, with "no effect on the already pending application," because he still had his "one complete round" pending while he filed the extraneous petitions.[18] Gaston, by contrast, did not. His one complete round was all over, except for the

---

[14]*Id.* (quoting *Saffold*, 536 U.S. at 223) (emphasis in original).

[15]*King*, 340 F.3d at 823.

[16]*Delhomme*, 340 F.3d at 819.

[17]*Id.* at 820-21.

[18]*Id.* at 821.

part on which he procedurally defaulted (a petition to the Supreme Court after the Court of Appeal dismissed his petition), when he went downstairs to the Superior Court.

The majority summarizes Gaston's claims, showing that his second application included some of the claims in his first application, but not all, and included some new claims, that his third application included only an entirely different claim, and that his fourth, fifth and sixth applications included some claims from his first, some from his second, and many claims that were in neither. But then it concludes, despite our authority to the contrary, that "Gaston did not complete a full round of habeas review until the California Supreme Court denied his sixth and final habeas application."

Gaston had nothing actually pending in any court during the entire year from when the statute began to run, April 24, 1996, to when the one year period ended, April 24, 1997. The only way his third, fourth, fifth, and sixth petitions matter is if he, by legal fiction, is treated as though he had something pending during that year when he did not, because he was completing his "one full round."

Had Gaston filed a second, remedial, petition in the Court of Appeal after that court denied his first petition for "lack of adequate record" on February 27, 1996, or had he remedied the defect in his record and gone "up the ladder," as *Biggs* and *King* put it, then he would have been completing his one full round. By going down the ladder with a different set of claims, he "kicked off a new round" and the AEDPA limitations period is only tolled for one round. Unlike the petitioner in *Delhomme*, he did not have his "one full round" still going on while he made his sundry filings. Gaston's round was all done when the Court of Appeal denied his petition in February 1996, because he never remedied its deficiencies or refiled that petition in a higher court.

The majority says that even if Gaston's fourth petition in Superior Court was the start of a new round, it would not mat-

ter under *Delhomme* because his first round was still going on. That would be so under *Delhomme* only if his first round really was going on. He could have kept it going by a renewed petition in the Court of Appeal, correcting deficiencies in the filing that caused it to be dismissed, or if he had simultaneously corrected the deficiencies and exhausted the claims "up the ladder" in the Supreme Court. He did neither. Unlike *Delhomme*, and like *Biggs* and *King*, Gaston was (at best) starting a new round when he took a new set of eleven claims to Superior Court in January 1999.

Is the law in our circuit now that — if a petitioner has filed anything in any state court before the statute of limitations ran, and after intervals of no more than three or four years between denials, files something else in any state court — AEDPA's statute of limitations is completely ineffectual? If no California court expressly states that the filings are untimely, perhaps that is, as of today, circuit law. Treating Gaston's random walk up and downstairs in the California court system as analogous to an ordinary state appellate process of exhausting one full round of post conviction relief does not square with common sense.