**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL K. CHESTANG, | No. 09-17621 |
| Petitioner - Appellant, | D.C. No. 2:07-cv-01173-LKK-GGH |
| v. | |
| D. K. SISTO, Warden, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Submitted June 10, 2013[**]
San Francisco, California

Before: O'SCANNLAIN and CALLAHAN, Circuit Judges, and EZRA, District Judge.[***]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]    The Honorable David A. Ezra, District Judge for the U.S. District Court for Hawaii, sitting by designation.

In 1993, Petitioner-Appellant Daniel K. Chestang pleaded guilty to the first-degree murder of Marlena Brooks and Sydney Newman in Sacramento, California. In 1994, he was sentenced to 60 years to life. Chestang argues that a 1993 psychological report and a 2004 declaration from his co-defendant confessing to the murders establish his actual innocence, thereby making his 2007 federal habeas petition timely under *McQuiggin v. Perkins*, No. 12-126, 569 U.S. -- , 2013 WL 2300806 (May 28, 2013) and *Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011) (en banc). We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm the district court's dismissal of Chestang's habeas petition as untimely.

**1.** The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2241-2255, requires a prisoner to file his federal habeas petition within one year of the date the judgment against him becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). For prisoners whose judgments become final before AEDPA became effective on April 24, 1996, the limitations period commenced on that date and expired, absent tolling, on April 24, 1997. *Gaston v. Palmer*, 417 F.3d 1030, 1033 (9th Cir. 2005). In *Perkins*, however, the Supreme Court held that actual innocence, "if proved," serves as an exception to AEDPA's statute of limitations. 2013 WL 2300806, at *3; *see also Lee*, 653 F.3d at 932. But "tenable actual-

innocence gateway pleas are rare," as a habeas petitioner "'must show that it more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Perkins*, 2013 WL 2300806, at \*3, \*11 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

2.     Chestang's actual innocence claim does not meet this threshold, for at least three reasons.[1] First, Chestang turned himself into the police and pleaded guilty to the murders while being represented by counsel. Chestang specifically pleaded guilty to shooting the gun. While these facts may not outright preclude Chestang from claiming actual innocence, *see Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (remanding for consideration of actual innocence claim where petitioner pleaded guilty), they seriously undermine the notion that he sat idly in the car while co-defendant Phillip Mann shot Brooks and Newman.[2]

---

[1] We reach this conclusion regardless of whether we review Chestang's actual innocence claim *de novo* or under AEDPA's highly deferential standard. *See* 28 U.S.C. § 2254(d).

[2] Chestang claims that his guilty plea was involuntary because he suffered from schizophrenia or mania. The state courts reasonably rejected this argument because the psychological evaluation on which Chestang relies stated that Chestang might have been malingering instead of mentally ill; the doctor who prepared the report concluded that Chestang's actions were "premeditated," if not "deliberated;" and the trial court, which considered the report, found there was "ample evidence in the record to show premeditation, deliberation, [and] malice aforethought."

Second, Mann's 2004 declaration, in which Mann claimed responsibility for the murders, is not credible in the face of Chestang's admissions immediately after the shootings. Two friends testified that Chestang, within hours of the murders, told them that he, not Mann, had shot the victims. When Chestang learned later the same day that he had shot the wrong people, he again confessed that he had been the shooter. In addition: Mann told their friends, in Chestang's presence and without any objection from Chestang, that Chestang had shot the victims; Chestang later admitted to his girlfriend that he had committed the shootings; and Chestang's own attorney explained that "the evidence in this case was overwhelming and the most compelling evidence was your own confession of these crimes to 5 or 6 of your closest friends."

Third, actual innocence claims focus on "new" evidence—*i.e.*, "relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28. In this case, Chestang's psychological report was before the trial court when he pleaded guilty and was sentenced. And while Mann's declaration may have been new as of 2004, it concerns events that took place in 1993 and that were within Chestang's knowledge. That is, if Mann, not Chestang, shot the victims, Chestang knew that fact on the night of the murders. He nonetheless told his friends he was the shooter, turned himself in, pleaded guilty, and served ten years

4

of his prison sentence before asserting that Mann was the shooter. *See Perkins*, 2013 WL 2300806, at \*11 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing."). Assessing "how reasonable [factfinders] would react to the overall, newly supplemented record," *Lee*, 653 F.3d at 929, it is not more likely than not that the trial court would have rejected Chestang's guilty plea or that, had Chestang gone to trial, every juror would have reasonable doubt that Chestang was guilty.

**AFFIRMED**.