**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FREDDY CURIEL,
*Petitioner-Appellant*,

v.

AMY MILLER, Warden,
*Respondent-Appellee.*

No. 11-56949

D.C.
No. 8:10-cv-00301-DDP-FMO

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted En Banc March 23, 2016
San Francisco, California

Filed July 25, 2016

Before: Sidney R. Thomas, Chief Judge, and Stephen
Reinhardt, Barry G. Silverman, Susan P. Graber, Ronald
M. Gould, Richard A. Paez, Jay S. Bybee, Mary H.
Murguia, Andrew D. Hurwitz, John B. Owens, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Murguia;
Concurrence by Judge Reinhardt;
Concurrence by Judge Bybee

# SUMMARY[*]

### Habeas Corpus

The en banc court reversed the district court's judgment dismissing as untimely California state prisoner Freddy Curiel's federal habeas corpus petition.

The en banc court held that the California Supreme Court's denial of Curiel's third state habeas petition with reference to *In re Swain* and *People v. Duvall* , California Supreme Court cases concerning the state habeas pleading particularity requirement, and with no reference to a California case dealing with untimeliness, demonstrate that the California Supreme Court found Curiel's third petition to be timely but deficiently pleaded, and in doing so, overruled the prior untimeliness rulings of the Superior Court and the Court of Appeal. The en banc court concluded that because the California Supreme Court's timeliness holding prevails, Curiel's state habeas petitions must be deemed "properly filed" for their entire pendency in state court for purposes of tolling AEDPA's statute of limitations, and that with such statutory tolling, Curiel filed his federal petition within the limitations period.

Concurring, Judge Reinhardt urged the California Supreme Court to specify whether it is deciding on the merits any or all of the questions of federal constitutional law that are raised in the case before it, and identify the constitutional basis of all such claims that it is denying, if any. He wrote

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

separately to urge the California Supreme Court to take a slightly different approach to questions of federal constitutional law in view of recent decisions of the United States Supreme Court that have placed on state courts an almost impossible burden of being the final decision-maker in an overwhelming number of cases involving fundamental constitutional rights of criminal defendants.

Concurring, Judge Bybee wrote separately to express frustration that communication between the California Supreme Court and this court over the proper interpretation of California state habeas decisions has devolved into a series of hints that the California Supreme Court obliquely telegraphs and that this court struggles to decipher.

## COUNSEL

Jan B. Norman (argued), Altadena, California, for Petitioner-Appellant.

Kevin Vienna (argued), Supervising Deputy Attorney General; Angela M. Borzachillo, Deputy Attorney General; Julie L. Garland, Senior Assistant Attorney General; Kamala D. Harris, Attorney General; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

## OPINION

MURGUIA, Circuit Judge:

This case concerns the timeliness of Freddy Curiel's federal habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We hold that the district court erred in dismissing Curiel's habeas petition as untimely.

## BACKGROUND

In March 2006, a California jury convicted Curiel of special circumstances first-degree murder and street terrorism. Curiel was sentenced to life in prison without the possibility of parole, plus twenty-five years.

Curiel appealed his conviction to the California Court of Appeal, which affirmed, and to the California Supreme Court, which denied his petition for review on June 11, 2008. Curiel's conviction became final on September 9, 2008, after the time for Curiel to file a petition for a writ of certiorari in the United States Supreme Court lapsed. 28 U.S.C. § 2244(d)(1)(A).

On May 12, 2009,[1] Curiel initiated a collateral attack on his conviction by filing a petition for a writ of habeas corpus

---

[1] All of the filing dates reflect the constructive filing date of the petition in accordance with the "mailbox rule," which provides that a habeas petition is deemed filed when the prisoner delivers it to prison authorities for forwarding to the clerk of the court, not when the petition is filed by the court. *Ramirez v. Yates*, 571 F.3d 993, 996 n.1 (9th Cir. 2009). The parties agree that the mailbox rule applies and do not contest the relevant dates.

in Orange County Superior Court. The court denied his petition on June 10, 2009, on the "separate and independent grounds" that it was untimely and that Curiel failed to set forth a prima facie case for relief. On July 7, 2009, Curiel filed a second habeas corpus petition in the California Court of Appeal, which the Court of Appeal denied on August 6, 2009, without comment or citation to authority. On September 7, 2009, Curiel filed a third habeas petition in the California Supreme Court, raising the same claims as his first two state petitions. On February 18, 2010, the California Supreme Court dismissed Curiel's petition in a decision that reads in full: "The petition for writ of habeas corpus is denied. (See *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464, 474.)."

On March 8, 2010, Curiel filed a federal petition for habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court. The government moved to dismiss Curiel's habeas petition as untimely because it was filed more than one year after his conviction became final. In opposition, Curiel argued that AEDPA's statute of limitations should be statutorily tolled for the period during which his state habeas petitions were pending, and also that he was entitled to equitable tolling due to trial counsel's alleged delay in returning his client file.

Accepting the findings and recommendation of the magistrate judge, the district court determined that Curiel was not entitled to statutory tolling for the three months that his habeas petitions were pending in the California Superior Court or the Court of Appeal because untimely petitions do not toll AEDPA's limitations period. The district court observed that the Superior Court had explicitly imposed an untimeliness bar in denying Curiel's first habeas petition, and

held that the Court of Appeal implicitly adopted the Superior Court's reasoning when it denied Curiel's second petition without explanation. The district court did, however, toll Curiel's federal filing deadline for the pendency of his petition in the California Supreme Court, concluding that the Supreme Court's citations to *Swain* and *Duvall* indicated that the court had denied Curiel's third petition based solely on the deficiency of his pleadings. Nevertheless, tolling the clock for the period that Curiel's petition was before the California Supreme Court, alone, was insufficient to render Curiel's federal petition timely. Therefore, after rejecting Curiel's equitable tolling argument, the district court dismissed Curiel's habeas petition with prejudice.

Curiel timely appealed, and we issued a certificate of appealability as to the timeliness of Curiel's federal petition for habeas corpus.

## STANDARD OF REVIEW

We review de novo a district court's denial of a habeas corpus petition. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). Where, as here, the facts underlying a habeas petitioner's claim for tolling of AEDPA's limitations period are undisputed, we also review de novo whether the statute of limitations should be tolled. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1025 (9th Cir. 2005).

## DISCUSSION

AEDPA requires a state prisoner to file a federal habeas petition pursuant to 28 U.S.C. § 2254 within one year of the date on which his conviction becomes final on direct review, unless the petitioner qualifies for statutory or equitable

tolling. *Id.* § 2244(d)(1)(A). In Curiel's case, AEDPA's one-year statute of limitations lapsed on September 9, 2009. *See id.* Curiel filed his federal petition on March 8, 2010. Thus, for his petition to be timely, Curiel must demonstrate that he is entitled to at least six months of tolling.

## I.

"[A] properly filed application for State post-conviction or other collateral review" tolls AEDPA's statute of limitations for the pendency of the state court proceedings. *Id.* § 2244(d)(2). A habeas petition that is untimely under state law is not "properly filed." *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Therefore, none of the time before or during the state court's consideration of an untimely petition is tolled for purposes of AEDPA's limitations period. *Evans v. Chavis*, 546 U.S. 189, 197 (2006).

In California, courts "appl[y] a general 'reasonableness' standard" when determining whether a habeas petition was timely filed. *Carey v. Saffold*, 536 U.S. 214, 222 (2002). A petition is timely under California law when the highest state court to render a decision on the petition finds it to be so. *Campbell v. Henry*, 614 F.3d 1056, 1061 (9th Cir. 2010).

## II.

The California Supreme Court rules on a "staggering" number of habeas petitions each year, generally by issuing "unelaborated 'summary denials.'" *Walker v. Martin*, 562 U.S. 307, 312–13 (2011). When the California Supreme Court denies a habeas corpus petition without opinion, it "frequently cites either a California Supreme Court case or some other authority which indicates to the petitioner the

grounds for the denial." *Harris v. Superior Court*, 500 F.2d 1124, 1127–28 (9th Cir. 1974) (en banc). The California Supreme Court has provided us with the following guidance on how to interpret its summary denial practice:

> [W]hen respondent asserts that a particular claim or subclaim . . . is untimely, and when, nevertheless, our order disposing of a habeas corpus petition does not impose the proposed bar . . . as to that claim or subclaim, this signifies that we have considered respondent's assertion and have determined that the claim or subclaim is not barred on the cited ground . . . .

*In re Robbins*, 959 P.2d 311, 340 n.34 (Cal. 1998).

"California courts signal that a habeas petition is denied as untimely by citing the controlling decisions . . . *Clark* and *Robbins*," which describe California's timeliness rule. *Walker*, 562 U.S. at 310, 312 (citing *Robbins*, 959 P.2d at 317; *In re Clark*, 855 P.2d 729 (Cal. 1993)). By contrast, the cases cited by the California Supreme Court here—*In re Swain* and *People v. Duvall*—both concern the pleading requirements that apply to a state habeas petitioner's claims. In *Swain*, the California Supreme Court explained that a petitioner must "allege with particularity the facts upon which he would have a final judgment overturned." 209 P.2d at 795–96. The California Supreme Court denied Swain's habeas petition "without prejudice to the filing of a new petition which shall meet the requirements" that it had just set forth. *Id.* at 796. Likewise, in *Duvall*, the California Supreme Court reiterated that a habeas petitioner must "state fully and with particularity the facts on which relief is

sought" and "include copies of reasonably available documentary evidence supporting the claim." 886 P.2d at 1258.

We understand the California Supreme Court's denial of a habeas petition with citations to *Swain* and *Duvall* in conjunction as, "in effect, the grant of a demurrer, *i.e.*, a holding that [the petitioner] ha[s] not pled facts with sufficient particularity."[2] *Gaston v. Palmer*, 417 F.3d 1030, 1039 (9th Cir. 2005), *reh'g granted, opinion modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006); *accord Cross v. Sisto*, 676 F.3d 1172, 1177–78 (9th Cir. 2012); *see also Seeboth v. Allenby*, 789 F.3d 1099, 1104 n.3 (9th Cir. 2015) ("We have held that citation to *Duvall* and *Swain together* constitutes 'dismissal without prejudice, with leave to amend to plead required facts with particularity.'" (quoting *Cross*, 676 F.3d at 1177)). The United States Supreme Court has attributed the same significance to a citation to *Swain*. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (summarizing *Swain* as holding "that facts relied upon in a habeas petition must be alleged with particularity"). Accordingly, and consonant with the California Supreme Court's own explanation of its summary order practice, we hold that the California Supreme Court's denial of Curiel's third habeas petition with reference to *Swain* and *Duvall*—and not a California case dealing with untimeliness—means that the California Supreme Court rejected Curiel's petition as insufficiently pleaded. *See Cross*, 676 F.3d at 1178; *Gaston*, 417 F.3d at 1039. And a state petition that was timely filed

---

[2] In its motion to dismiss Curiel's federal habeas petition, the government agreed that "in combination with the citation to *Duvall*, the Ninth Circuit has interpreted citations to *Swain* to indicate that a petition was denied for failing to state claims with the requisite particularity."

but inadequately pleaded under California law is considered "properly filed" and entitles a federal petitioner to statutory tolling under § 2244(d)(2). *Gaston*, 417 F.3d at 1039. Thus, the dispositive question is whether to treat the California Supreme Court's citations to *Swain* and *Duvall* as an affirmative finding that Curiel's claims were timely, depriving the contrary rulings by the Superior Court and Court of Appeal of all force and effect.

## III.

AEDPA directs federal courts to train their attention on the particular reasons why each state court that considered a prisoner's claims denied relief. When more than one state court has adjudicated a claim, the federal court analyzes the last "reasoned" state court decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst*, 501 U.S. at 803–04). In doing so, "the federal court should review the last decision in isolation and not in combination with decisions by other state courts." *Id.* at 1093.

When at least one state court has rendered a reasoned decision, but the last state court to reject a prisoner's claim issues an order "whose text or accompanying opinion does not disclose the reason for the judgment," we "look through" the mute decision and presume the higher court agreed with and adopted the reasons given by the lower court. *Ylst*, 501 U.S. at 802–06. However, if more than one state court has rendered a reasoned decision on a habeas petition, the ordinary rules of appellate review apply, such that a determination by a higher-level court overrules a

determination on the same issue by a lower-level court.[3] *Chavis*, 546 U.S. at 192–93; *Saffold*, 536 U.S. at 221–22; *Campbell*, 614 F.3d at 1061. There is no question that the timeliness of a habeas petition is a matter subject to appellate review. *Campbell*, 614 F.3d at 1061. Thus, "if the highest court to render a decision determines that the claim is timely, then that claim was timely when it was before the lower court." *Id*.

We have no cause to treat a state court's summary order with citations as anything but a "reasoned" decision, provided that the state court's references reveal the basis for its decision. *Cf. Ylst*, 501 U.S. at 802–03 (defining an "unexplained" order as one from which the state court's rationale is "undiscoverable"). The Supreme Court has never required state courts to be verbose for AEDPA purposes. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011) ("There is no text in the statute requiring a statement of reasons."). The United States Supreme Court has surmised that a summary denial with citations to the relevant California precedent on untimely habeas petitions is sufficient to impose an untimeliness bar. *See Martin*, 562 U.S. at 319 ("In reasoned opinions, too, California courts regularly invoke *Clark*[] [and] *Robbins* . . . to determine whether a habeas petition is time barred."); *Chavis*, 546 U.S. at 207 (Stevens, J., concurring) ("The decision that a petition has been untimely filed need not be explicitly stated; citation to a case in which a petition

---

[3] California's collateral review system differs from that of other States in that it contemplates that a prisoner will file a new "original" habeas petition in each court in which he seeks relief. *Saffold*, 536 U.S. at 222. Nevertheless, it is well settled that California's original writ system is sufficiently analogous to appellate review systems in other states, such that a higher state court may overturn a lower court's ruling on a particular issue. *Id.* at 222–23.

was dismissed as untimely filed certainly would suffice."). In the same vein, in *Thorson v. Palmer* we held that the California Supreme Court had provided a "clear ruling" that it found a habeas petition untimely when the court's order stated in its entirety, "Petition for writ of habeas corpus is DENIED," accompanied by a citation to *Robbins.* 479 F.3d 643, 644–45 (9th Cir. 2007).

The California Supreme Court's citations to *Swain* and *Duvall* offer equally adequate insight into the court's reasoning to treat its opinion as the last reasoned decision on the timeliness of Curiel's state habeas petitions. To the extent that a denial accompanied by citations to *Swain* and *Duvall* is the equivalent of a demurrer for pleading inadequacies, the California Supreme Court's decision indicates that the court must have found Curiel's petition timely, because a demurrer is irreconcilable with the lower courts' untimeliness determinations. A dismissal without prejudice for failure to plead with specificity invites a refiling of the habeas petition, while a dismissal for lack of timeliness precludes it.

Further, Curiel presented the same claims to the California Supreme Court that he had in his first two habeas petitions, along with the Superior Court's decision denying relief on untimeliness grounds. Thus, the California Supreme Court was aware that the lower courts had already denied Curiel's first two petitions for untimeliness. If it agreed with those courts' conclusions, the California Supreme Court could have simply issued a postcard denial without explanation or citation, or denied Curiel's petition by citing *Robbins* and *Clark*. *See Martin*, 562 U.S. at 318–19. It did neither. As the United States Supreme Court has explained, so long as the state court's timeliness ruling is clear, that is "the end of the matter." *Saffold*, 536 U.S. at 226. Under the

circumstances, the California Supreme Court's citations to *Swain* and *Duvall* (and no other cases) are a clear signal that it found Curiel's habeas petitions timely.

The Supreme Court has admonished us in the past not to assume that a California court found a state habeas petition to be timely from the court's silence on the question. *Chavis*, 546 U.S. at 193–94, 198. State courts have always been free to eschew procedural determinations and "summarily dismiss a petition on the merits, if that is the easier path." *Martin*, 562 U.S. at 319. Nevertheless, in cases in which the California Supreme Court has explained its decision—as it did here—the principles of comity and federalism underlying AEDPA's tolling rule compel us to fairly abide by the state court's timeliness determination. *See Saffold*, 536 U.S. at 222–23 (describing the purpose underlying AEDPA's statute of limitations). The California Supreme Court's citations to *Swain* and *Duvall* demonstrate that the court found Curiel's third petition timely but deficiently pleaded; in doing so, the California Supreme Court overruled the prior untimeliness rulings of the Superior Court and Court of Appeal. To hold otherwise would neglect the effort of the California Supreme Court to differentiate its reasoning from that of the lower courts.

**IV.**

Because the California Supreme Court's timeliness holding prevails, Curiel's state habeas petitions must be deemed properly filed for their entire pendency in state court

for purposes of tolling AEDPA's statute of limitations.**[4]**  *See Campbell*, 614 F.3d at 1060–61; *see also Trigueros v. Adams*, 658 F.3d 983, 991 (9th Cir. 2011) (holding that a habeas petitioner was entitled to statutory tolling for the period from the date he filed his state habeas petition in Los Angeles County Superior Court until the date his state habeas petition was denied by the California Supreme Court, because the California Supreme Court did not find the petitioner's state petition time barred).  It is therefore easy to conclude that Curiel's federal habeas petition was timely.  AEDPA's statute of limitations began to run on September 9, 2008.  Curiel filed his first state habeas petition on May 12, 2009, and the California Supreme Court denied his last petition on February 18, 2010.  Curiel is thus entitled to 283 days of statutory tolling for this period, which extends the deadline for Curiel to file his federal habeas petition until June 2010.  Curiel filed his federal petition in district court on March 8, 2010, well within the extended limitations period.**[5]**

---

**[4]** The district court was correct in its interpretation of the California Supreme Court's citation to *Swain* and *Duvall*. The district court erred only by tolling the statute of limitations solely for the time during which Curiel's last petition was before the California Supreme Court, rather than for the entire duration of Curiel's state collateral review proceedings. *See Campbell*, 614 F.3d at 1061.

**[5]** During the pendency of these en banc proceedings, the United States Supreme Court decided *Kernan v. Hinojosa*, 136 S. Ct. 1603 (2016), holding that the California Supreme Court had not silently disregarded a procedural bar imposed by the Superior Court when the California Supreme Court summarily denied Hinojosa habeas relief, such that its decision was "on the merits" for AEDPA purposes. *Id.* at 1604–06. In *Hinojosa*, the United States Supreme Court concluded that *Ylst*'s "look-through" presumption did not apply to the California Supreme Court's summary denial because the reasons supplied in the last reasoned state court decision—the Superior Court's order denying Hinojosa's habeas

**CONCLUSION**

For the foregoing reasons, we hold that the district court erred in dismissing Curiel's federal habeas petition as untimely. Because Curiel timely filed his federal habeas petition once we account for statutory tolling, we do not reach the question of equitable tolling.

**REVERSED and REMANDED**.

REINHARDT, Circuit Judge, concurring:

I concur fully in Judge Murguia's opinion for the court. I also agree generally with Judge Bybee that our decision-making would be aided significantly if the California Supreme Court were to explain more clearly the basis for its summary denials. Even more important, I would urge the California Supreme Court to specify in its opinions whether it is deciding on the merits any or all of the questions of federal constitutional law that are raised in the case before it, and identify the constitutional basis of all such claims that it is denying, if any.

petition for improper venue—could not logically have been adopted by the California Supreme Court when it denied Hinojosa's habeas petition without comment or citation. *See id.* at 1606 ("Improper venue could not possibly have been a ground for the high court's summary denial of Hinojosa's claim. There is only one Supreme Court of California—and thus only one venue . . . ."). Although *Hinojosa* also concerned the interpretation of a summary decision by the California Supreme Court, neither its reasoning nor its result alters the outcome of this case.

I write separately, however, to urge the California Supreme Court to take a slightly different approach to questions of federal constitutional law in view of recent decisions of the United States Supreme Court that have placed an almost impossible burden on state courts: to be the final decision-maker in an overwhelming number of cases involving fundamental constitutional rights of criminal defendants. Although recognizing that the California Supreme Court "disposes of close to 10,000 cases a year, including more than 3,400 original habeas corpus petitions," *Harrington v. Richter*, 562 U.S. 86, 99 (2011), the United States Supreme Court has virtually eliminated the ability of federal courts to enforce the Constitution when reviewing state court convictions, holding instead that under AEDPA federal courts must defer to state court decisions regarding questions of federal constitutional law, even though the state courts often have neither the time nor the resources to fully and carefully consider those questions or even to explain their rulings.

Hamstrung as the federal courts now are as a result of these post-AEDPA decisions, state supreme courts have become, at least for the time being, the last safeguard of the United States Constitution in the vast majority of criminal cases, and the last guardian against constitutional violations resulting from deliberate actions of state and local law enforcement and other officials. The failure or inability of state supreme courts to carefully scrutinize lower state court decisions involving claims of federal constitutional error will, in the absence of some modification to the present process, leave without a remedy numerous individuals who have been deprived of their fundamental rights. It is an unfortunate and overwhelming burden that the Supreme Court has, perhaps unwittingly, placed upon state courts, but I would hope that

those courts, especially California's, will find a way to help ensure that our Constitution will nevertheless be enforced and that justice will be achieved in all cases.

* * *

It is no secret that the United States Supreme Court has severely limited the ability of federal courts to grant habeas relief ever since the passage in 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). It has done so by interpreting that statute in exceedingly narrow, and in my view, exceedingly unfortunate, ways. AEDPA, which was adopted at the urging of President Bill Clinton in the immediate wake of the Oklahoma City bombing— purportedly as a means of combatting domestic terrorism, but coincidentally during a presidential election year—prohibits federal courts from granting habeas relief on issues that state courts have addressed, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Although AEDPA itself limits federal review of state convictions, the Supreme Court's increasingly restrictive interpretation of that provision has gone well beyond the face of the statute to virtually eliminate meaningful federal review.

The Supreme Court's restrictions on the ability of federal courts to protect the constitutional rights of criminal defendants in state proceedings began in 2000 with its decision in *Williams v. Taylor*. 529 U.S. 362. There, the Court explained that federal courts *cannot* grant habeas relief even if a constitutional violation is clear under established circuit court law unless the constitutional question at issue has been decided by a holding of the Supreme Court. *See id.*

at 403–06, 412. Not only must the Supreme Court have previously decided the constitutional question at issue, but the "precise contours" of the rule must have been established by the Supreme Court. *See Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). Further, slight factual differences between cases have been enough for the Court to determine that no "clearly established" law existed on a particular question. *See Carey v. Musladin*, 549 U.S. 70, 75–77 (2006); *see also White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014); *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). The Supreme Court, of course, hears only about 80 cases per year, most of which are not criminal cases, and it therefore addresses applications of constitutional law in that area far less frequently than circuit courts. Moreover, it generally does not consider cases when the circuit courts are in agreement and no conflict exists. Thus, in those instances in which developments in the law are generally agreed upon, there is likely to be no clearly established Supreme Court law at all, simply because the law is so clear as not to require intervention by the Court. For these reasons and others, although a constitutional violation may be clear, federal courts will often be unable to grant habeas relief as there is no "clearly established" Supreme Court law governing the question—certainly a counter-intuitive, if not a counter-productive, result.

In addition to the restrictive "clearly established" Supreme Court law doctrine, *Williams* began a march by the Supreme Court toward a narrow and regressive definition of the phrase "unreasonable application." In that case, the Court held that federal courts may not grant relief even though the state courts *erroneously* applied clearly established Supreme Court law. Rather, it said, any erroneous application of the Constitution must also be objectively unreasonable. *See*

*Williams*, 529 U.S. at 410–13. To many judges' great surprise, the Court then determined that this standard was not met even if federal courts had a definite and firm conviction that the state court had erroneously applied clearly established Supreme Court law. *See Andrade*, 538 U.S. at 75. Subsequently, the Court held that a decision could be objectively unreasonable only "in cases where there is *no possibility* fairminded jurists could disagree that the state court's decisions conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102–03 (emphasis added).[1]

Next, the Supreme Court held that if the state court's rejection of the petitioner's claim is "unaccompanied by an explanation," federal courts must attempt to conjure up a plausible, though not necessarily correct, hypothetical basis for the state court's decision, and, if they can, that will suffice. *See id.* at 98–99; *Johnson v. Williams*, 133 S. Ct. 1088 (2013). Thus, even if every imagined basis that the federal court can think of is clearly incorrect, the court may still not grant relief so long as any of the reasons, while wrong, could be deemed "reasonable." In short, even though an individual has erroneously been deprived of his constitutional rights, he must remain in prison, perhaps for life, or even possibly suffer capital punishment, if there is no

---

[1] This last holding is indeed puzzling. The Supreme Court provided no guidance with respect to how one might determine whether a jurist is, in fact, "fairminded." Indeed, as Justice O'Connor noted in *Williams*, defining "unreasonable application" by reference to reasonable jurists is not only "of little assistance to the courts that must apply" AEDPA, but is also "misleading." *See Williams*, 529 U.S. at 409–10. That is because in every habeas case at least several of the nation's presumably fairminded jurists have made the decision not to grant relief, and therefore, every issue has already been subject to at least some disagreement among fairminded jurists.

pre-existing Supreme Court case that has recognized the specific error involved *or* if the state court's ruling, although erroneous, could have been arrived at by a "fairminded jurist," however that term may be defined. *See supra* n. 1.

This is only a small sample of the Supreme Court's restrictive habeas jurisprudence, and its drive toward eliminating federal review does not appear to have yet reached its limit. In *Cullen v. Pinholster*, the Supreme Court held that federal courts must not only defer to all "reasonable" though erroneous state court decisions, but that in determining whether a decision was reasonable, federal courts must ignore all evidence that had not been presented initially to the state court. 563 U.S. 170, 181–85 (2011). This decision was not only based on an unprecedented interpretation of AEDPA, but it constrains federal courts' ability to correct egregious constitutional violations when state courts, as in *Pinholster*, refuse to hold evidentiary hearings on federal constitutional issues or when petitioners previously had incompetent representation which failed to properly develop the record before the state courts.[2]

Just last year, the Supreme Court reversed this court for granting habeas relief in a case in which there had been an egregious constitutional violation relating to the exclusion by the prosecution of all minority members from a jury that sentenced a young Hispanic man to death. *Davis v. Ayala*,

---

[2] One narrow exception to this constraint exists. Federal courts may consider new evidence in order to determine whether a petitioner can establish cause and prejudice to excuse the procedural default of an ineffective assistance of trial counsel claim under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *See Dickens v. Ryan*, 740 F.3d 1302, 1319–21 (9th Cir. 2014).

135 S. Ct. 2187 (2015).    The defendant in that case
challenged this systematic exclusion of minority jurors, but
neither he nor his counsel was allowed to be present when the
prosecution provided purportedly race-neutral reasons for its
actions to the judge.  Despite the blatant deprivation of due
process, a bare majority of the United States Supreme Court
held that under AEDPA no relief could be granted by a
federal court because "a fairminded jurist could agree" with
the state court's determination that the error was harmless.
*See Ayala*, 135 S. Ct. at 2198–99, 2203.  Again, of course,
that appears to mean that even if the state court ruling was in
actuality contrary to the dictates of the Constitution, as surely
it was,[3] federal courts are powerless to enforce defendants'
fundamental rights if some, even a small minority of,
"fairminded jurists" might disagree.

*Ayala* is illustrative of the frustrations many federal jurists
have with the current habeas system.  As the Supreme Court
has repeatedly recognized, state appellate courts face heavy
caseloads that often prevent them from fully analyzing

---

[3] As Justice Sotomayor eloquently explained in her dissent, "secret
decisions based on only one side of the story will prove inaccurate more
often than those made after hearing from both sides."  *Ayala*, 135 S. Ct.
at 2212 (Sotomayor, J. dissenting) (internal quotations omitted).  "Absent
an adversarial presentation, a diligent judge may overlook relevant facts
or legal arguments in even a straightforward case," let alone a capital case
like Ayala's "where jury selection spanned more than three months,
involved more than 200 prospective jurors, and generated a record that is
massive by any standard."  *Id.* at 2212–13.  By prohibiting Ayala's
lawyers from arguing at the hearing, the trial court prevented them from
challenging the credibility of the prosecution's purportedly race-neutral
reasons for striking minority jurors, which raised grave doubt "as to
whether the outcome of these proceedings—or the appellate courts'
review of them—would have been the same had counsel been present."
*Id.* at 2213.

defendants' claims of federal constitutional violations or even from explaining their reasons for denying them. *See Williams*, 133 S. Ct. 1095–96; *Richter*, 562 U.S. at 99. Strangely, the Court has even gone so far as to justify deference to inadequate state courts' decisions on the ground that those courts do not have the time to write considered opinions. *See, e.g.*, *Williams*, 133 S. Ct. at 1095–96. Recently, the Court has told us that federal courts may ordinarily grant habeas relief only when confronted with flagrant and "extreme malfunctions" of the state court system. *See Richter*, 562 US. at 102–03. As a result, there is now a large body of constitutional violations that federal courts must overlook and are without authority to remedy, even in cases in which the state courts are unequipped to properly do their job.

* * *

Clearly, the state courts are not to blame for this unhappy state of constitutional affairs. One can only sympathize, for example, with the plight of the California Supreme Court with its massive potential caseload and severely strained resources. Nevertheless, perhaps what was not so long ago the most innovative court in the nation will once again be able to provide national leadership when it considers the problem of the untold numbers of habeas petitions raising substantial claims of federal constitutional violations and the current unavailability of the federal courts to help review these claims. Without a new approach, even clearly erroneous constitutional decisions of state courts will remain uncorrected and leave defendants without the check on constitutional error that until recently the federal courts provided.

The Supreme Court's extreme deference to state court decisions in AEDPA cases is due primarily to its concern about comity and federalism. The states may, however, be able to accommodate that concern by making some adjustments to their decision-making process. Perhaps the Court's recent decisions limiting federal habeas review will inspire the California Supreme Court to develop creative methods of alleviating additional miscarriages of justice. After all, the states are the laboratories of experimentation, even in today's judicial systems. One approach to attempting to ensure the needed added protection of constitutional rights might be for the California Supreme Court to experiment with certifying individual dispositions which it believes should not be afforded the extraordinary deference provided by AEDPA because it or the state court of appeal was compelled to reject the constitutional challenge without conducting a full analysis or preparing a thorough written opinion. Similarly, the state courts of appeal could certify some of their decisions for non-AEDPA review for whatever reasons they deem appropriate. Additionally, the California Supreme Court could certify particular categories of cases which it believes would benefit substantially from such federal review, for example, death penalty cases, cases involving sentences of life without parole, certain types of cases involving youthful offenders, or even cases in which the last reasoned decision was made by a superior court. Certainly such a system would be preferable to limiting federal courts to correcting "extreme malfunctions" in the state court system and ignoring all violations of the rights of individuals that are non-systemic or

about which there is no possibility that a reasonable judge could disagree.[4]

I cannot predict whether the United States Supreme Court would accept a system of certification by state courts and thereby permit full and fair federal review of cases that in the judgment of the state courts warrant such treatment. I would hope, however, that such certifications would be recognized if only out of respect for the concerns of the affected states. Doing so would certainly be consistent with the Court's interest in comity and federalism and would encourage the state and federal systems to work together once again to enforce the Constitution in a just and orderly manner, an objective surely to be desired by all.

In sum, as of now, the role of the federal courts in habeas cases has been eviscerated and federal judges have been compelled to say (perhaps in contravention of their oath of office):    "I know this result is unfair, unjust, and unconstitutional, but I have been told that I must nevertheless defer to the view of the state courts—courts that may have had neither the time nor resources to fully review the constitutional errors involved." One can hope, however, that the overwhelmed state courts, recognizing these facts, will find ways to make certain that individuals who may not have received fair trials or just sentences in the state court system are treated as the Constitution envisions—that they are afforded a full and fair review of their constitutional claims by courts fully staffed and with the resources necessary to protect their constitutional rights.

---

[4] As any student of the law is aware, dissent is a fundamental part of the legal system, and "fairminded debate" is present in nearly every, if not every, case.

BYBEE, Circuit Judge, concurring:

I was a member of the three-judge panel that was first assigned this case. There, I joined the panel's decision that reached a different result from the one we reach as an en banc court today. *See Curiel v. Miller*, 780 F.3d 1201, vacated 798 F.3d 1209 (9th Cir. 2015). Upon further reflection, I now find our decision here to be more consistent with Supreme Court precedent, with how our court has previously analyzed summary denials of habeas petitions by California state courts, and with the interpretive signals that the California Supreme Court has flashed in the past. Accordingly, I concur in Judge Murguia's opinion for the court in full.

I

I write separately to express my frustration that communication between the California Supreme Court and our court over the proper interpretation of California state habeas decisions has devolved into a series of hints that the California Supreme Court obliquely telegraphs and that we struggle to decipher. Unfortunately, I am not voicing an original or unique complaint—our court has been making its concerns with California's habeas practice known for the better part of half a century. *See Castro v. Klinger*, 373 F.2d 847, 850 (9th Cir. 1967) ("From our standpoint, the failure of the California court to reveal the basis of its denial, whether substantive or procedural, is unfortunate.").[1]

---

[1] I recognize that I am writing against a long history of conversations between our court and the California Supreme Court over precisely these kinds of concerns. Perhaps changes in the composition of that court will give it the opportunity to rethink how it disposes of its summary habeas docket.

However hamstrung by our own ignorance we may be, today we take our best shot at divining the meaning of the California Supreme Court's actions when it denies a state habeas petition with a few bare case citations.  References to *Swain* and *Duvall*—we're pretty sure[2]—mean that the California Supreme Court denied Curiel's habeas petition for failure to plead his claims with sufficient particularity.  *See* Maj. Op. at 9–10.  And, drafting off the United States Supreme Court's decision in *Walker v. Martin*, 562 U.S. 307, 310 (2011), we also seem pretty sure that when the California Supreme Court uses citations to *Clark* and *Robbins* it means that the court is denying a state habeas petition as untimely.[3] *See* Maj. Op. at 8.

---

[2] We've been puzzling over these same two citations for more than a decade.  *See Seeboth v. Allenby*, 789 F.3d 1099, 1104 n.3 (9th Cir. 2015); *Cross v. Sisto*, 676 F.3d 1172, 1176–78 (9th Cir. 2012); *Gaston v. Palmer*, 417 F.3d 1030, 1038–39 (9th Cir. 2005), *reh'g granted, opinion modified on other grounds*, 447 F.3d 1165 (9th Cir. 2006).

[3] Unfortunately, even this conclusion might be shaky.  In an amicus brief submitted to the Supreme Court in *Walker v. Martin*, the Habeas Corpus Resource Center performed a case study of the 157 habeas petitions denied by the California Supreme Court on September 11, 2002.  *See* Br. for Habeas Corpus Resource Center as Amicus Curiae in Support of Respondent at 18, *Walker v. Martin*, 562 U.S. 307 (2011) (No. 09-996). Of the sixty-two petitions apparently denied due to a procedural bar, thirty-two of them were denied with citations to *Clark*, *Robbins*, or *Clark* and *Robbins*.  *Id.* at 20–21.  Although the amicus "assume[d]" that citations to *Robbins* alone applied the same timeliness bar that dual citations to *Clark* and *Robbins* applied, it could not explain why the California Supreme Court would sometimes choose to use one citation and sometimes choose to use both citations.  *Id.*  To make matters more complicated, amicus pointed out that a single "*Clark* citation likely signified an invocation of the bar against successive petitions," but because *Clark* sometimes stands for a timeliness bar, it was impossible to know—without "guidance" from the California Supreme Court—which bar the court was actually applying.  *Id.* at 21.

So far, so good. But what if the California Supreme Court denies a petition with a reference to *In re Gallego*, 959 P.2d 290 (Cal. 1998)—doesn't that mean a petition is denied as untimely too? *See Walker*, 562 U.S. at 312. And what if the California Supreme Court pairs a citation to *Swain* with one to *In re Dixon*, 264 P.2d 513 (Cal. 1953); do they morph into a pair of "procedural bars"? *See Washington v. Cambra*, 208 F.3d 832, 833–34 (9th Cir. 2000). And if a single citation to *Duvall* means that the habeas claim was adequately developed but lacks merit, *see Seeboth*, 789 F.3d at 1103, how can it be that slapping on a *Swain* citation without any further explanation means that the claim was not properly presented and can be re-filed, *see id.* at 1104 n.3?

In the face of this complicated tangle of bare citations without any accompanying explanation, what is a conscientious federal court—especially one disposed both by nature and statutory command to defer to state courts on matters of state law—to do? Unfortunately, unless we discover a Rosetta Stone in the San Francisco Bay that helps us crack the California Supreme Court's habeas code, I worry that cases like this one will reoccur with some frequency and that federal courts will be forced to trot out their best Alan Turing impressions on a regular basis.

The best we can do—and what the court does today—is give our best guess as to what the California Supreme Court means and proceed on that assumption, understanding that "California, of course, remains free to tell us if, in this respect, we were wrong." *Evans v. Chavis*, 546 U.S. 189, 200 (2006). But it doesn't have to be that way—and the California Supreme Court can make sure of it. The addition of a handful of words to its summary denials could go a long way to clearing up our court's confusion. For example, why

not slip in "as untimely filed" between "Petition denied" and citations to *Clark* and *Robbins*?  Such a move would make it quite difficult for a federal court to overlook California's determination that the habeas petition was denied on timeliness grounds.  Or how about adding "for failure to state a claim with particularity" between "Petition denied" and citations to *Swain* and *Duvall*?  It would be tough to confuse that order with one denying the petition as untimely or successive.  Small changes like these would save the federal courts the time and resources we expend playing detective, and would make it far more likely that, when a federal court reviews the reasoning of the state court, it properly ascertains the basis of the earlier decision.[4]

## II

My complaints about the burden that the California Supreme Court's unnecessarily opaque habeas system have focused, selfishly, on the substantial costs it imposes on the resources of this court.  I have now sat on this case twice,

---

[4] Alternatively, the California Supreme Court might consider promulgating some sort of decisional key that lays out the meaning of various combinations of citations, and I note that the court has set out something similar in at least one past decision (though at a higher level of abstraction and nearly twenty years ago).  *See In re Robbins*, 959 P.2d 311, 340 n.34 (Cal. 1998).  Advocating for a different tack, one commentator has suggested that California courts could use a "standardized form whenever they summarily deny habeas petitions" on which judges would "check the boxes next to the applicable reasons" for the denial like "'untimely' or 'procedurally defaulted.'"  Theresa Hsu Schriever, Comment, *In Our Own Backyard: Why California Should Care About Habeas Corpus*, 45 McGeorge L. Rev. 763, 796 (2014).  Such a system, the commentator posits, would "requir[e] scant additional time or effort on the part of the judges, yet [would] still provid[e] some insight into why the petition was denied."  *Id.*

joined two published decisions, and changed my mind once. I have been perturbed and confounded by this case; but this is, after all, my job. I know that many of my colleagues are similarly frustrated in their efforts to decipher California's code. On reflection, however, I have a much deeper concern that the costs visited on this court pale in comparison to the costs that the California Supreme Court's imprecision imposes on its own citizens and state government, because they have no more clue what the California Supreme Court means than we do.

Take, for example, Curiel. Acting *pro se*, Curiel did not pick up on the court's suggestion that his state habeas claims were pleaded with insufficient particularity, because rather than beefing up his petition and re-filing it in state court—which *Swain* counsels he might have been able to do, *see In re Swain*, 209 P.2d 793, 796 (Cal. 1949)—he headed straight to federal court. Because it has taken this case six years to wind through the federal courts, it is now probably too late for Curiel to re-raise his state claims even if he wanted to do so.[5] Curiel may have had state habeas remedies, but due to the inscrutability of the California Supreme Court's order denying his habeas petition, he may not have

---

[5] But then again, maybe Curiel's state habeas petition would be timely because who knows what California's "within a 'reasonable time'" standard for timely filing means? *Evans*, 546 U.S. at 192 (quoting *In re Harris*, 855 P.2d 391, 398 n.7 (Cal. 1993)). We sure don't. *See Robinson v. Lewis*, 795 F.3d 926 (9th Cir. 2015) (certifying a question to the California Supreme Court in seek of guidance as to the scope of California's timeliness bar); *Chaffer v. Prosper*, 542 F.3d 662 (9th Cir. 2008) (same). In any case, the state at oral argument represented that it would challenge the timeliness of any new state habeas petitions Curiel sought to file. *See* Oral Argument at 35:25, *Curiel v. Miller*, No. 11-56949 (Mar. 23, 2016).

known that those remedies existed or that he was being invited to take advantage of them. By his inaction following his confusion, Curiel has likely forfeited his habeas rights under the California Constitution. *See* Calif. Const. art. VI, § 10; *see also In re Harris*, 855 P.2d at 398 n.7 (explaining that under the "general rule regarding timeliness," a habeas petition "must be filed within a reasonable time after the petitioner or counsel knew, or with due diligence should have known, the facts underlying the claim as well as the legal basis of the claim").

For its part, the California Attorney General's Office appears similarly befuddled. The state argued that the "California Supreme Court's citation to *Swain* was an *explicit* finding that the petition was . . . untimely," and that the Court had "*unequivocally* found Curiel's petition delayed." Appellee's Br. 22, 26 (emphasis added). For the reasons explained in our opinion today, it seems that the "explicit" was, in fact, unclear and the "unequivocal," well, equivocal. During oral argument, the following exchange occurred between the panel and the advocate for the state:

> **Judge Hurwitz:** But your answer to my question is yes, that the California Supreme Court has two different ways of telling us that a petition is untimely. One is by citing *Robbins*, correct?
>
> **State's Attorney:** I'd say three, but yes, *Robbins*.
>
> **Judge Hurwitz:** Three different ways to tell us that it's untimely?

**State's Attorney:** Yes.

**Judge Friedland:** Why would they choose one versus another?

**State's Attorney:** That might be a good reason for certification [to the California Supreme Court] because I'm not exactly sure.

Oral Argument at 21:46. And then counsel went further, pointing out that "there is a fundamental difficulty with habeas in California and that is it doesn't result in reasoned decisions so it doesn't accrete like the common law does to solve problems." *Id*. at 34:32. In the span of just a few minutes, counsel for the State of California, representing the very office charged with ensuring that the legal dictates of the California Supreme Court are fairly enforced, highlighted both the procedural and substantive shortcomings of that court's current approach.

### III

We are well aware of the "staggering number of habeas petitions" the California Supreme Court must address each year. *Martin*, 562 U.S. at 312–13. I am not suggesting that the Court assume any kind of "burdensome opinion-writing requirement." *Johnson v. Lee*, 136 S. Ct. 1802, 1807 (2016) (per curiam). I am suggesting, respectfully, a bit more elucidation from the California Supreme Court would better preserve the comity enjoyed between our two courts and would help prevent the sort of "needless friction between state and federal courts" that Congress and the Supreme Court have sought to avoid "dating almost from the beginning of our history." *Okla. Packing Co. v. Okla. Gas & Elec. Co.*,

309 U.S. 4, 8–9 (1940).  I take very little pleasure in mucking around in questions of state law, and I take even less pleasure in answering questions of state law incorrectly.  Should the California Supreme Court give us some guidance, it can better ensure that when our court is confronted with a matter of California procedural law—as we are hundreds of times a year when California's prisoners file federal habeas petitions in the federal courts[6]—we give proper effect to the state court's decisions.  Such an effort by the California courts to stake out its territory would dovetail nicely with the federal courts' long tradition of doing our best to stay out of the state courts' business whenever possible, *see, e.g.*, *Younger v. Harris*, 401 U.S. 37, 40–41 (1971) (federal courts should abstain from enjoining pending state criminal prosecutions); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941) (federal courts should abstain from ruling on constitutional questions until questions of state law are resolved in state courts),[7] and our statutory obligation in habeas to stay out of the state courts' business except under the most demanding of standards, *see, e.g.*, 28 U.S.C. § 2254(d) (mandating that a federal court may grant a writ of habeas corpus only when the "judgment of a State court . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law"

---

[6] From 2011 to 2015, nearly one thousand habeas appeals from the four federal districts in California were fully briefed before this court (986 to be exact).  That number does not include the multitude of petitions filed in our court that we dismiss without full briefing due to jurisdictional defects or because they are successive.

[7] *See Orange Cty. Dep't of Educ. v. Calif. Dep't of Educ.*, 668 F.3d 1052, 1066–67 (9th Cir. 2011) (Bybee, J., concurring in part and dissenting in part) (citing these and other examples).

or "resulted in a decision that was based on an unreasonable determination of facts").

In *Younger*, the Court famously wrote that "Our Federalism" represents

> a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

401 U.S. at 44. Until we can tell what the California Supreme Court has decided, we won't know how to afford California the deference to which it is entitled.